J. M. LOFTIS AND J. S. LOFTIS, ADMINISTRATORS, ESTATE OF S. T. A. LOFTIS, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7581.   Promulgated April 6, 1927.

Where the evidence shows that the assets of a branch store, separately operated to conform to the foreign corporation laws of a State, are owned by the taxpayer corporation, a book entry crediting such assets to the principal stockholder is not sufficient to support a finding that such stockholder received a taxable dividend thereof.

*Henry W. Wales, Esq.*, for the petitioners.
*John W. Fisher, Esq.*, for the respondent.

This proceeding involves a deficiency in income tax of $35,974.72 for the calendar year 1919, arising from the action of the commissioner in including within income the amount of $70,607.19 alleged to have been paid to decedent as a dividend.

FINDINGS OF FACT.

The petitioners are the duly appointed and qualified administrators of the estate of S. T. A. Loftis, deceased, formerly a resident of Chicago, Ill.

Loftis Bros. & Co., an Illinois corporation, hereafter referred to as the company, was organized in 1906. It is, and has been since its organization, engaged in the business of selling diamonds, watches, jewelry, and kindred articles at retail on the installment basis. Its main office is in Chicago, and from time to time it has established branches in many of the larger cities of the United States.

In April, 1917, the company, acting through S. T. A. Loftis, its then president, purchased with corporate funds the stock in trade of a bankrupt jeweler in Houston, Tex. To this stock it added some of its own merchandise, and opened a branch store. The company was advised that because of Texas laws in respect of foreign corporations it would be advantageous to hold the business in the name of an individual. The Houston branch was accordingly held in the name of S. T. A. Loftis, but was conducted under the trade name of Loftis Bros. & Co.

At the same time the company took over, in the name of S. T. A. Loftis, and conducted under the trade name of Stewart & Co., a pawnbroker business formerly at the same location. This business was discontinued the latter part of 1920, and its accounts were closed off the books in August, 1921.

The accounts of the Houston store were carried, as were the accounts of all the company's branches, on the general books of the

company. On April 1, 1919, this practice was deviated from and a separate set of books was opened for the Houston store. About $70,000 of assets were transferred from the general books of the company to the set for the Houston store and controlling accounts opened which tied the two sets of books together. This method was not followed in the cases of the other branches, their accounts being continued on the general books of the company.

The company sent several of its employees to the Houston store, and paid the salaries of the manager and all employees. All amounts received were deposited in a bank in Houston subject to withdrawal only by the company, which uniformly withdrew the funds as they accumulated and deposited them to its own credit in its bank in Chicago. No part of these monies was ever credited to the personal account of S. T. A. Loftis on the books of the company. All taxes in connection with the Houston store were paid by the company. The business forms of the Houston store bore the name "Loftis Bros. & Company," the address of Houston, Tex., and the address of the executive offices at Chicago, and were the same as those used by the other branches of the company. Merchandise was regularly transferred to the Houston store on consignment, and charged to it at cost, the same as to other branches. All executive business, all purchases and plans and details of the advertising campaign, and the payment of all larger expense items, including rent, were handled by the company at Chicago. All of these practices and conditions obtained throughout the entire period from April, 1917, to the date of hearing.

S. T. A. Loftis died intestate, July 30, 1920. After his death the company continued, as it had in the past, to operate the Houston store as a branch of its business, and used the property. The affairs of the company in respect of the Houston store were not changed in any respect. There had been no change in their method of handling this matter at the time of this hearing.

From 1911 to the date of decedent's death, the stockholders of the company were three in number, S. T. A. Loftis, owning 2,998 shares, J. M. Hessel, holding one share, and E. C. Phillips, holding one share.

No meetings of the board of directors or of the stockholders of the company were held during the period from January 3, 1916, to July 31, 1920. No dividend was expressly declared. The profits of the company were used for the expansion of the business. Salaries were paid as determined by decedent. The amount of the salaries did not depend upon the profits made by the company.

On July 25, 1921, Roy L. Provancher entered the employ of the company as an auditor. After making an examination of the books

of the company, including the books recording the business of the Houston store, he concluded that the accounts between the company and the Houston store were not in agreement, and did not reflect the true condition of affairs. Accordingly, for the purpose of eliminating from the company's surplus that which he considered was also included in the surplus of the Houston business, he made the following entry on the journal of the company under date of August 31, 1921:

General Journal Voucher No. 219.

| | | |
|---|---|---|
| Surplus | $70,607.19 | |
| Loftis Bros. & Company—Houston | | $68,109.10 |
| Stewart & Company—Houston | | 2,498.09 |

To write-off to surplus the values of the net assets of Loftis Brothers & Company—Houston, and Stewart & Company—Houston, respectively, as of April 1, 1919, upon the occasion of the transferring of these businesses to Mr. S. T. A. Loftis, authorized R. L. Provancher.

This entry was made without consulting and without the authority of the then president, who had been in active charge of the company since August, 1920, and there had been no meeting of the board of directors at which such an entry was discussed or authorized. The president first learned of this entry in 1924, at the time of the Government audit of the books.

Provancher was never in the employ of the company during the lifetime of decedent.

Some time in 1920 the controlling account on the books of the company was given the title of "S. T. A. Loftis—Houston" and the corresponding account on the books of the Houston store was given the title "Loftis Bros. & Company—Chicago."

From 1917 on, there has at all times been on the company's books a personal account of S. T. A. Loftis entitled "S. T. A. Loftis—Personal." None of the transactions between the company and the Houston store appear in this account.

The assets of the Houston store were not inventoried by the petitioners as a part of the estate of decedent. The survivors of decedent have never considered these assets as a part of his estate.

In his income-tax return for 1919 decedent included in his income $54,924.63 received as income from the "Jewelry and Pawnbroker" business in "Houston, Texas."

Other than as outlined herein decedent had no business in Houston, Tex.

OPINION.

STERNHAGEN: The respondent has included within the decedent's income for 1919 the amount of $70,607.19 by treating it as a dividend distribution made by the company to him in that year. To sustain this determination the respondent relies not upon an express declaration of dividend, which admittedly was not made, but upon circumstantial facts which it is said can be reconciled only with the conclusion that such a dividend was in fact made. This circumstantial evidence consists principally of the fact that the decedent during his lifetime included within his 1919 income the profits of the Houston business and that Provancher's book entry of 1921 took the Houston assets out of the corporate surplus as of April 1, 1919. Reliance is placed by the respondent also upon the fact that the decedent fully controlled the affairs of the corporation during his lifetime and that formal declaration of dividends had never been made. These circumstantial facts are not in our opinion sufficient to establish either that a dividend was declared or that in any other way the decedent received the $70,607.19 in question, particularly in view of the petitioner's evidence to the contrary.

The corporation with its own funds bought the business in Houston. It has never, so far as the record shows, ceased to be the true owner of the business, and as such to stand behind it. During the year in question the Houston business was treated as a branch of the company's business, just as many other branches. The fact that it adjusted itself to the Texas laws by trading indirectly under a trade name does not destroy the evidence of its acts of ownership. But, however that may be, we are here concerned with the question whether in 1919 this decedent received the Houston assets, and not with the manner and style of the conduct of the Houston business. Even although the decedent might have returned the income from the Houston business as his own in 1919, it would still be an open question when and how he became the owner. The fact that an adjusting charge to surplus was made on the corporation's books in 1921 does not, even if it was authorized, and certainly not if unauthorized, establish such receipt in 1919. While book entries may afford some evidence to support a fact, it is well established that they can not of themselves prove a fact otherwise authoritatively denied. Here Provancher's entry was said by him to have been made upon his own initiative without consulting any corporate officer, was retroactive to a time which he knew nothing about, and was expressly made only that the balance between the Chicago books and the Houston books might be preserved. Such an entry is as evidence too weak to give support to the conclusion that income was received.

We are of opinion from the evidence that the decedent in 1919 did not have the income of $70,607.19 attributed to him by the respondent, and the determination in this respect is reversed.

> *Judgment will be entered on 20 days' notice, under Rule 50.*